FILED

2021 Dec-29  AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:19-cv-01193-NAD |
| | ) | |
| HIGH SEC LABS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated below, the court **GRANTS** Defendant High Sec Labs Inc.'s motion for summary judgment (Doc. 25).   The court will enter judgment for Defendant High Sec Labs.

## BACKGROUND

Plaintiff Raymond Mason's complaint alleges a single claim for retaliation in violation of Title VII in connection with alleged pregnancy discrimination against Tamara Jefferson.   Doc. 1.

### A.    Factual background

#### 1.    Defendant High Sec Labs' attendance policy (point system)

Defendant High Sec Labs manufactures cyber defense products at its facility in Huntsville, Alabama.   Doc. 26-1 at 2.   During the relevant time period, Plaintiff Mason worked on an assembly production line at that facility.   Doc. 26-1 at 3.

From August 2018 until July 2020, Charles Phillips was the Production Manager at the facility.   Doc. 26-1 at 2.   Phillips supervised the efficiency of the employees' work on the assembly production line.   Doc. 26-1 at 3.   As part of that supervision, Phillips oversaw employee attendance as outlined in High Sec Labs' attendance policy—which involved a point system—because punctuality and consistency were critical to High Sec Labs' assembly production line work.   Doc. 26-1 at 3.

In a sworn declaration in this case, Phillips stated that, during his tenure at High Sec Labs, he "applied the attendance policy consistently and did not knowingly allow any employees to exceed applicable point totals without discipline or termination."   Doc. 26-1 at 5.

As noted above, the High Sec Labs employee attendance policy was based on a point system for absences and tardiness.   Doc. 26-1 at 7–10; *see also* Doc. 26-2 at 55–58.   Different types of employee attendance violations resulted in different amounts of points.   Doc. 26-1 at 7–10.

The policy clearly stated that "[a]ny employee who accumulates 6 or more points under this system will be discharged unless [a] supervisor intervenes."   Doc. 26-1 at 7.   Under the point system, when an employee accumulated 4 points, the employee would receive a final written warning.   Doc. 26-1 at 8.   And, when an employee accumulated 6 points, the employee would have to meet with a manager

and would be "consider[ed] for dismissal."   Doc. 26-1 at 8.

In his deposition in this case, Mason testified that High Sec Labs was "very lenient when it came to this point system, I think," and stated that he did not recall any coworkers who had been terminated after having accumulated 6 points.   Doc. 26-2 at 15.   Mason testified that an employee named "Joe" had accumulated 9 points but had not been terminated.   Doc. 26-2 at 15.   However, Mason later testified that, eventually, Joe had been terminated for attendance issues.   Doc. 26-2 at 26.   Mason also acknowledged that he knew of "four or five other people [who] got fired for attendance."   Doc. 26-2 at 26.

### 2. Plaintiff Mason's employment at Defendant High Sec Labs and his relationship with Tamara Jefferson (another High Sec Labs employee)

In July 2017, Mason began working for High Sec Labs in its warehouse. Doc. 26-2 at 12.   A plant manager named "David" later reassigned Mason to work on the assembly production line, and then promoted Mason to a lead mechanic position.   Doc. 26-2 at 12.

Phillips subsequently replaced David as Mason's manager; and, according to Mason's deposition testimony, then "everything went downhill."   Doc. 26-2 at 12.

Mason also testified that a High Sec Labs IT employee named "Cory" had told him that Mason never would receive a salary raise because management did not like Mason.   Doc. 26-2 at 13.

3

High Sec Labs terminated Mason on August 28, 2018.   Doc. 26-1 at 5.

During his time working at High Sec Labs, Mason was in a romantic relationship with another High Sec Labs employee named Tamara Jefferson.[1]   Doc. 26-2 at 5, 20.   Mason testified that High Sec Labs did not "like employees to date, because if one miss[es] [work], usually the other miss[es] as well."   Doc. 26-2 at 23.

In 2018, Jefferson was pregnant with Mason's child, but she suffered a miscarriage sometime in July.   Doc. 26-2 at 20–21.

Mason testified that on August 24, 2018 (four days before High Sec Labs terminated him), Jefferson had missed work to go to the emergency room for complications related to her miscarriage.   Doc. 26-2 at 20–21.

### 3.   Plaintiff Mason's attendance issues

When Mason began working at High Sec Labs, he signed an acknowledgment of High Sec Labs' attendance policy.   Doc. 26-2 at 14, 53; Doc. 26-1 at 4.   On May 9, 2018, he signed another acknowledgement.   Doc. 26-2 at 14, 54; Doc. 26-1 at 4.   Mason also confirmed in deposition testimony that he knew about the attendance policy and point system.   Doc. 26-2 at 14–15.

In his sworn declaration, Phillips stated that Mason had a record of poor

---

[1] Jefferson has filed a separate action against High Sec Labs in this court, *Jefferson v. High Sec Labs Inc.*, No. 5:19-cv-00858-NAD.

attendance and punctuality at High Sec Labs.   Doc. 26-1 at 3.

On January 23, 2018, Mason received a written warning for 4 attendance points (Doc. 26-2 at 59), and he received another on June 19, 2018 (Doc. 26-2 at 60).

That June 19, 2018 warning specifically stated that, if Mason accumulated 6 attendance points, he would be "considered for termination."   Doc. 26-2 at 60.

Mason's attendance improved in July 2018.   Doc. 26-1 at 4.   In fact, Mason was employee of the month for July 2018.   Doc. 26-2 at 17.

But, in August 2018, Mason's attendance and timeliness again declined. Doc. 26-1 at 4.

Mason's time records show that he left work early on August 3, 2018, and on August 9, 2018.   Doc. 26-1 at 18.   The time records also show that Mason missed work on August 20, 2018.   Doc. 26-1 at 19.

Mason had a planned absence, which he had requested in advance, for August 24, 2018, and he did not attend work that day.   Doc. 26-1 at 19; Doc. 26-2 at 20.

On August 27, 2018, Mason arrived late to work.   Doc. 26-1 at 19.

Mason stated in his deposition that he could not recall the attendance policy violations on August 3, 9, 20, and 27, 2018.   Doc. 26-2 at 17–18.   Mason said, "I don't even think I left early those days.   That's just out of my characteristic."   Doc. 26-2 at 18–19.   However, he conceded that he clocked-in and -out electronically,

and that High Sec Labs used the related time records to determine his attendance and timeliness.   Doc. 26-2 at 19.

### 4.   August 2018 events leading to Plaintiff Mason's termination, and his August 27, 2018 email

As explained above, Mason had attendance issues on August 3, 9, and 20, 2018; he had a planned absence on August 24, 2018; he had another attendance issue on August 27, 2018; and he was terminated on August 28, 2018.   *See* Doc. 26-1 at 5, 18–19; Doc. 26-2 at 20.

In his sworn declaration, Phillips stated that when Mason missed work on August 20, 2018, he had accumulated 6 attendance points and had become subject to termination under High Sec Labs' attendance policy.   Doc. 26-1 at 4.

Again (as noted above), Mason had requested a planned absence for August 24, 2018, so that he could go on vacation with his mother to Florida.   Doc. 26-2 at 20.

Mason testified in his deposition that Jefferson did not accompany him on that trip.   Doc. 26-2 at 20.   Rather, Mason testified that Jefferson also had missed work on August 24, 2018, because she had gone to the emergency room because of complications related to her miscarriage.   Doc. 26-2 at 20–21.

August 24, 2018, was a Friday.   Mason returned to work on Monday, August 27, 2018, and arrived late for his shift (as noted above).   Doc. 26-1 at 19.

Phillips stated in his declaration that Mason's late arrival on August 27, 2018,

violated High Sec Labs' attendance policy, and that Mason was away from his workstation for much of his shift on August 27 and on August 28.   Doc. 26-1 at 4–5.   Phillips communicated to his immediate supervisor (Ron Alkalay) that Mason had violated the attendance policy, and that he was subject to termination.   Doc. 26-1 at 4.

Mason testified that, after he arrived to work on August 27, 2018, Phillips called him into his office; Phillips then accused Mason of knowing that Jefferson had missed work (on August 24) to travel with Mason to Florida, and not for medical reasons.   Doc. 26-2 at 21–22.   Mason told Phillips that Jefferson had not traveled with him on the trip.   Doc. 26-2 at 21–22.

That same day (August 27, 2018), Mason wrote an email to one of High Sec Labs' owners (Roni Soffer).   Doc. 26-2 at 19.   Mason's email stated as follows:

> Hello Mrs Roni, I am currently the lead on functional test and registration and my name is Mason.  I have been working for your company for over a year now.  I have came to work and excelled at every position that I have worked at.  I have been missed treated and over looked for months.  I have been a lead since December which is 9months or more now.  I have came to work every day regardless of pay and did my job to the best of me making Sheena [Goble] and company look good.  I have been lied to countless times about getting my raises that I am due.   On top of that I requested 2 days for my mom birthday trip and when I returned to work today I was accused of a few things.  I tried to explain myself but Charles [Phillips] didn't let me talk.  That was very disrespectful for him to accuse me of some[thing] that is not true and when I try to explain my side he tell me to get out his office.  I was employee of the month of July and I feel I work to hard and im great at what I do so I shouldn't be mistreated or overlooked.  I am currently dating another employee and we recently

loss a baby.   She was pregnant and we loss our baby.   It was very hard for us.   Her name is Tamara and she miss days due to having surgery to have our dead baby taken out of her.   She always bring a doctor excuse and friday night she needed to go to the emergency room so she missed saturday at work.   I had requested off 3 weeks prior to Friday so I wasn't at work friday or Saturday but bc she missed Saturday they accuse us of taken a trip together and Sheena [Goble] been trying to fire Tamara bc she missed days and knowing we just had a hard time because we loss our baby.   I didn't even take off work to go with Tamara when she had the procedure to remove our dead baby from her body.   I have been dedicated until recently.   I say until recently bc I have been mistreated and lied to.   Id like to see if you can do anything to help this situation.   I am so sorry to bother but at this point im all out of options and I only want what is fair.

Doc. 26-2 at 63.

With regard to his email, Mason clarified in his deposition that he thought Sheena Goble, a supervisor at High Sec Labs, did not like Jefferson, and that Goble wanted to terminate Jefferson.   Doc. 26-2 at 22.   Mason testified that Goble "get everybody fired," and that if Goble personally did not like a person then she would have that person terminated.   Doc. 26-2 at 22.

According to Mason, "I ain't saying [Goble] was trying to fire [Jefferson] because she lost the baby.   I was saying that [Goble] know we lost the baby, and if [Jefferson] needed to take some days off, I didn't get why [Goble] would try to fire her."   Doc. 26-2 at 22.   Mason said that "[m]y motivation for my email was mostly Charles [Phillips] and how he was treating me and Tamara [Jefferson] based on allegations that was false that he believed for no reason."   Doc. 26-2 at 22–23.

Mason testified that the owner (Soffer) replied to his email and stated that she

8

would talk to Phillips.   Doc. 26-2 at 23.   Mason testified that Phillips apologized to him, but the next day Phillips demoted him and then terminated him.   Doc. 26-2 at 23.   Mason testified that he thought Phillips had terminated him in retaliation for his having emailed Soffer.   Doc. 26-2 at 23.   He further testified that he believed he was terminated "because I stood up for what I believe was right, sent the email, and Mr. Charles and Sheena did not like that at all."   Doc. 26-2 at 25–26.   Mason testified that Goble had "gotten people fired for a lot less," and said that he previously had sent an email to Soffer about how Goble ran the company and showed favoritism.   Doc. 26-2 at 26.

Mason testified that people should not be terminated "for personal reasons." Doc. 26-2 at 26.   He testified that Goble did not like him, so Goble and Phillips decided to terminate him for personal reasons, not based on attendance.   Doc. 26-2 at 26.   Mason testified that he did not think that he actually had 6 attendance points, but instead that High Sec Labs had "covered [its] tracks" to terminate him because of the email that he had sent to Soffer.   Doc. 26-2 at 19.

Phillips stated in his declaration that he terminated Mason on August 28, 2018, "based upon Mason's failure to adhere to the requirements of the Attendance Policy."   Doc. 26-1 at 5.

Phillips also stated that he "had no reason to believe that [Mason] had taken any action to oppose pregnancy discrimination on behalf of his girlfriend, Tamara

9

Jefferson."   Doc. 26-1 at 5.   Phillips stated that he "did not know or believe that Ms. Jefferson was pregnant or that she had recently sought medical attention for any pregnancy-related conditions."   Doc. 26-1 at 5.   Further, he stated that the "decision to terminate Mason's employment was not motivated in any way [sic] to any email communication Mason may have sent to Roni Soffer."   Doc. 26-1 at 5.

Following his termination, Mason did not receive unemployment benefits because the Alabama Department of Labor determined that he had been terminated for misconduct based on excessive absenteeism and tardiness.   Doc. 26-2 at 64.

## B.   Procedural background

Plaintiff Mason filed an EEOC charge, and received a right to sue letter.   Doc. 1-1.   On July 26, 2019, Mason filed his complaint, alleging one claim for retaliation in violation of Title VII.   Doc. 1.   The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).   Doc. 9.

On March 1, 2021 (after the close of discovery), Defendant High Sec Labs filed its summary judgment motion (Doc. 25), along with a brief in support (Doc. 27), and evidentiary materials (Doc. 26).

This case was reassigned to the undersigned on August 31, 2021—almost six months later.   Doc. 28.   At that time, Mason had not filed any response to High Sec Labs' summary judgment motion.

On September 10, 2021, the court held a status conference, and then ordered

Mason to file a response to High Sec Labs' summary judgment motion on or before September 17, 2021.   Doc. 30.   Mason did not file a response.

So, on September 24, 2021, the court ordered Mason to show cause in writing—on or before October 1, 2021—why the court should not grant High Sec Labs' summary judgment motion.   Doc. 31.   Mason did not respond by October 1.

Instead, on October 4, 2021, Mason responded by filing a one-page response that consisted of only a cover page.   Doc. 32.

On October 5, 2021, the court contacted Mason's counsel by email (cc'ing High Sec Labs' counsel) to inquire whether there had been some error in the filing. But Mason still has not filed a substantive response.

### C.    Legal background

Title VII prohibits discrimination on the basis of pregnancy as part of the prohibition against sex discrimination.   *See* 42 U.S.C. § 2000e(k).

Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by Title VII, or because of participation in a Title VII investigation or hearing.   42 U.S.C. § 2000e–3(a).

The first clause, which prohibits retaliation for opposing discrimination, is known as the "opposition clause"; while the second clause, which prohibits retaliation for participating in a proceeding related to discrimination, is known as the

"participation clause."   *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

With regard to the so-called "opposition clause," the term "oppose" has its ordinary meaning.   *Crawford v. Metropolitan Gov. of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009).

A plaintiff can establish a violation of Title VII's anti-retaliation provision based on direct or circumstantial evidence.   *Furcron v. Mail Ctrs. Plu*s*, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016).   Where a plaintiff only presents circumstantial evidence of retaliation, "the burden of proof shifts between the parties in accordance with the framework established in *McDonnell Douglas Corp. v. Green*," 411 U.S. 792 (1973).   *Id.*

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff seeking to prove retaliation first "must establish a prima facie case."   *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (quoting *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995)).   To make a prima facie case of retaliation, a plaintiff must show three elements:   "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events."   *Id.* (quoting *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc)).

If a plaintiff alleging Title VII retaliation can make that prima facie showing, then "the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision." *Id.* at 1325. If the defendant makes that showing, "the burden shifts back to the plaintiff to establish that the reason offered by the defendant 'was not the real basis for the decision, but a pretext for discrimination.'" *Id.* (quoting *Richardson*, 71 F.3d at 806).

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To avoid summary judgment, the nonmovant must go beyond mere allegations to offer specific facts creating a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's responsibility is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must construe all evidence and draw all reasonable inferences in the light most favorable to the nonmovant.

*Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a), (c).

## DISCUSSION

While Plaintiff Mason has not filed a response to Defendant High Sec Labs' summary judgment motion, the court cannot grant a summary judgment motion because of "the mere fact that the motion was unopposed."   *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).   Accordingly, the court carefully has reviewed the record evidence, construing all facts and reasonable inferences in favor of Mason (the nonmovant), and has determined that the motion is appropriate for decision without oral argument.

**I.    There is no evidence supporting a retaliation claim under the participation clause, and no direct evidence supporting a retaliation claim under the opposition clause.**

A review of the record shows that there is no evidence supporting a retaliation claim under the participation clause, and no direct evidence supporting a retaliation claim under the opposition clause.   Because Plaintiff Mason did not participate in any investigation or hearing related to alleged discrimination, the only potential basis for a retaliation claim in this case is the opposition clause of Title VII's anti-retaliation provision.   *See Gogel*, 967 F.3d at 1134; *see generally* Doc 26-1; Doc.

14

26-2.

Mason appears to allege a retaliation claim grounded in the opposition clause, based on allegations that Defendant High Sec Labs retaliated against him because he had "opposed" High Sec Labs' alleged pregnancy discrimination against Jefferson.   42 U.S.C. § 2000e–3(a).   But there is no direct evidence in the record to support that claim.

Direct evidence proves a fact without "inference or presumption"; therefore, direct evidence of discrimination is evidence that "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."   *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (abrogated on other grounds)). A statement that suggests, but does not prove, a retaliatory or discriminatory motive is not direct evidence.   *Id.*

In this case, the record does not contain any evidence that directly proves a retaliatory or discriminatory motive for High Sec Labs' conduct.   *See id.*   As a result, Mason's claim—based only on circumstantial evidence—is subject to the multi-part *McDonnell Douglas* test explained above.   *See Furcron*, 843 F.3d at 1310.

## II.   Plaintiff Mason cannot make the necessary prima facie showing of retaliation because he cannot show protected activity.

Under the *McDonnell Douglas* framework, a plaintiff first must show

"statutorily protected expression" to make a prima facie showing of retaliation (*see Johnson*, 948 F.3d at 1325); Plaintiff Mason cannot make that threshold showing.

Protected activity requires a plaintiff to "explicitly or implicitly" communicate a belief that an employment practice "constitutes unlawful employment discrimination," even where a plaintiff seeks to prove a Title VII retaliation claim based on evidence of informal complaints. *Furcron*, 843 F.3d at 1311. The plaintiff employee must have communicated his belief that discrimination was occurring, and cannot simply rely on the employer "to infer that discrimination has occurred." *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) (quoting *Webb v. R & B Holding Co., Inc.,* 992 F. Supp. 1382, 1390 (S.D. Fla. 1998)).

Furthermore, to establish protected activity, a plaintiff must show not only that he had the subjective belief that his employer had engaged in an unlawful employment practice, but also that his belief was objectively reasonable in light of the facts and the law. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). While a "plaintiff is not required to prove that the discriminatory conduct complained of was actually unlawful," the plaintiff must make a showing of an objectively reasonable good faith belief that discrimination had occurred. *Furcron*, 843 F.3d at 1311.

Plus, to show an objectively reasonable belief that an employer had engaged

16

in unlawful discrimination, the employee must have reasonably believed that the employer already had taken some discriminatory adverse employment action. *Howard*, 605 F.3d at 1245.

In this case, Mason's only potentially protected activity (under the opposition clause, *see supra*) was his August 27, 2018 email to the owner, Roni Soffer—allegedly to protest Defendant High Sec Labs' mistreatment of Jefferson.   Doc. 1 at 3; *see generally* Doc 26-1; Doc. 26-2 at 63.   And the only potentially unlawful discrimination as to Jefferson would have related to her pregnancy.   Doc. 1 at 3; *see also* 42 U.S.C. § 2000e(k).   Practically speaking, Mason alleges that—based on his email to Soffer—High Sec Labs terminated him in retaliation for his having opposed High Sec Labs' discrimination against Jefferson based on her pregnancy.   *See also* Doc. 26-2 at 23 (Mason deposition testimony that High Sec Labs terminated him in retaliation for his having emailed Soffer).

But Mason's email to Soffer does not even say that someone at High Sec Labs had discriminated against Jefferson because of her pregnancy.   Instead, that email focused primarily on the fact that Mason himself had been "mistreated" and "overlooked," and argued that management had lied to him about a salary raise. Doc. 26-2 at 63.   Mason also focused on the fact that Phillips had "accused [him] of a few things," and had not given Mason an opportunity to explain himself.   Doc. 26-2 at 63.

In the email, Mason did explain that he was in a relationship with Jefferson, that Jefferson had suffered a miscarriage that required medical intervention, and that the pregnancy and miscarriage had led to Jefferson's having missed work.   Doc. 26-2.   But even those statements were part of Mason's explanation that he and Jefferson had not traveled together for vacation (in August 2018), and that he had not lied about that vacation.   Doc. 26-2 at 63.

The closest the email comes to alleging discrimination based on Jefferson's pregnancy is Mason's statement that "Sheena [Goble] been trying to fire Tamara bc she missed days and knowing we just had a hard time we loss our baby."   Doc. 26-2 at 63.   But, even in that statement, Mason appears to argue only that Goble should have been more compassionate about Jefferson's situation.   The statement contains no allegation—even implicitly—that Goble was *discriminating* against Jefferson because of her pregnancy.   As Mason explained in his deposition, "I ain't saying Sheena was trying to fire [Jefferson] because she lost the baby.   I was saying that [Goble] know we lost the baby, and if [Jefferson] needed to take some days off, I didn't get why [Goble] would try to fire her."   Doc. 26-2 at 22.

Consequently, Mason's email to Soffer did not "explicitly or implicitly" communicate a belief that any of High Sec Labs' employment practices constituted unlawful employment discrimination.   *Furcron*, 843 F.3d at 1311.   The email does not explicitly mention discrimination based on pregnancy, and provides no basis for

High Sec Labs to have inferred that Mason was complaining about unlawful discrimination.  *See* Doc. 26-2 at 63; *see Demers*, 321 F. App'x at 852.  Indeed, Phillips provided a sworn statement that he "had no reason to believe that [Mason] had taken any action to oppose pregnancy discrimination on behalf of his girlfriend, Tamara Jefferson."  Doc. 26-1 at 5.

While the email may demonstrate that Mason believed that High Sec Labs had treated Jefferson *unfairly*, that email does not suggest that any of High Sec Labs' conduct was *unlawful* discriminatory behavior based on a protected characteristic under Title VII.  *See* 42 U.S.C. § 2000e–2(a)(1).  As the Eleventh Circuit has explained, "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII."  *Boyland v. Corrections Corp. of Am.*, 390 F. App'x 973, 975 (11th Cir. 2010) (quoting *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995)).

Moreover, Mason cannot show that his email to Soffer was based on a good faith, objectively reasonable belief that High Sec Labs had engaged in unlawful discrimination.  *See Howard*, 605 F.3d at 1244.  In fact, the record shows that Mason did not have a subjective belief that High Sec Labs had discriminated against Jefferson based on pregnancy.  Mason testified in his deposition that Goble (a supervisor) did not like Jefferson and wanted to terminate her, but he clarified that he was *not* saying that Goble wanted to fire Jefferson for reasons related to

Jefferson's pregnancy.  Doc. 26-2 at 22.  Rather, Mason testified that he simply was saying that Goble should have been "more understanding, considering what [Jefferson had] been through, if [Jefferson] need time off."   Doc. 26-2 at 22.

Mason never testified that he sent the email to Soffer based on a belief that anyone had discriminated against Jefferson on account of her pregnancy.  To the contrary, he testified that his motivation for emailing Soffer was "mostly Charles and how he was treating me and Tamara based on allegations that was false that he believed for no reason"—i.e., allegations related to Mason's trip to Florida in August 2018.  Doc. 26-2 at 22–23.

Nor can Mason show that any belief that High Sec Labs had engaged in discrimination would have been objectively reasonable.  *See Howard*, 605 F.3d at 1244.  The record indicates that, when Mason wrote his email to Soffer, no one at High Sec Labs had taken any adverse employment action against Jefferson.  *See id.* at 1245.  Without an adverse employment action, even if Mason had believed that High Sec Labs had discriminated against Jefferson, that belief was not objectively reasonable.  *See id.*

Thus, even construing all facts and reasonable inferences in Mason's favor (*see Centurion Air Cargo, Inc.*, 420 F.3d at 1149), the record clearly shows that Mason did not engage in statutorily protected expression or activity.  As a result, he cannot make a prima facie showing of retaliation, as required under the *McDonnell*

*Douglas* framework.   *See Johnson*, 948 F.3d at 1325.

### III.   Even if Plaintiff Mason could make a prima facie showing of retaliation, he cannot make the necessary showing of pretext.

Even if Plaintiff Mason could make a prima facie showing of retaliation, he still cannot show the pretext necessary to establish his Title VII claim.   *See Johnson*, 948 F.3d at 1325.   Conclusory allegations of retaliation, without supporting evidence, cannot establish pretext.   *Furcron*, 843 F.3d at 1313.

Here, Defendant High Sec Labs has offered a legitimate nondiscriminatory reason for terminating Mason (*see Johnson*, 948 F.3d at 1325)—that is, High Sec Labs terminated Mason based on his violations of its attendance policy.   Doc. 27 at 14.   In this regard, High Sec Labs has met its burden of production (*see Furcron*, 843 F.3d at 1312–13), and the burden shifts back to Mason to show that his attendance violations were not the actual reason for his termination, but instead were a pretext for discriminatory retaliation (*see Johnson*, 948 F.3d at 1325).

To show pretext, a plaintiff must produce evidence showing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."   *Furcron*, 843 F.3d at 1313 (quoting *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005)).   Where an employer proffers a nondiscriminatory motive for an employment action, the plaintiff must "meet that reason head on and rebut it."   *Chapman v. AI Transp.*, 229

21

F.3d 1012, 1030 (11th Cir. 2000) (en banc).

In particular, "[w]hen an employer claims that a plaintiff was fired for violating a work rule, a plaintiff may show pretext through evidence (1) that he did not violate the cited work rule, or (2) that if he did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Boyland*, 390 F. App'x at 975 (citing *Damon v. Fleming Supermkts., Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999)).

In this case, Mason cannot show that High Sec Labs' proffered nondiscriminatory reason for his termination was actually a pretext for retaliation. In his sworn declaration, Phillips stated that he terminated Mason based on Mason's failure to adhere to High Sec Labs' attendance policy—i.e., after Mason had accumulated more than 6 attendance points.   Doc. 26-1 at 4–5.   The High Sec Labs attendance policy clearly stated that an employee who accumulates 6 points for attendance violations "will be discharged unless [a] supervisor intervenes."   Doc. 26-1 at 7.

Prior to his termination, Mason had received two written warnings (in January and June 2018) about his having accumulated 4 attendance points.   Doc. 26-2 at 59–60.   The June 2018 warning specifically informed Mason that further attendance violations could result in termination.   Doc. 26-2 at 60.

According to Phillips' unrebutted testimony, Mason then had multiple

attendance violations in August 2018, which resulted in Mason's having accumulated over 6 attendance points.   Doc. 26-1 at 4.   Phillips stated that Mason's attendance violations rendered him subject to termination under the attendance policy as of August 20, 2018.   Doc. 26-1 at 4.

In this regard, the record facts corroborate Phillips' declaration.   Mason conceded that he electronically clocked-in and -out, which was how High Sec Labs determined attendance and timeliness.   Doc. 26-2 at 19.   The time records confirm Phillips' recitation of the facts, and show that Mason had multiple attendance violations and absences in August 2018 (Doc. 26-1 at 18–19), after having received the warning for attendance problems in June 2018 (Doc. 26-2 at 60).   Thus, the record amply supports High Sec Labs' argument that Mason's termination was based on violations of its attendance policy.

Furthermore, the record evidence cannot rebut High Sec Labs' proffered reason for termination, and cannot show pretext.   Mason testified in his deposition that he did not think he had accrued attendance violations in August 2018 because it was "out of [his] characteristic," and that he did not remember those attendance violations.   Doc. 26-2 at 17–19.   Mason also testified, without providing factual support or evidence, that he did not think he actually had accumulated 6 attendance points.   Doc. 26-2 at 19.

But there is no record evidence to support those assertions.   Such vague and

conclusory assertions cannot rebut High Sec Labs' evidence of nondiscriminatory termination, even at the summary judgment stage.   *See Furcron*, 843 F.3d at 1313. A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."   *Gogel*, 967 F.3d at 1134 (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).   In light of Phillips' sworn testimony and the undisputed time records, no reasonable jury could find that Mason was subject to termination for any reason other than his violations of High Sec Labs' attendance policy.   *See Boyland*, 390 F. App'x at 975.

That conclusion is confirmed by the fact that Mason cannot show that High Sec Labs treated other employees differently.   *See id*.   Phillips stated in his sworn declaration that, during his tenure at High Sec Labs, he "applied the attendance policy consistently and did not knowingly allow any employees to exceed applicable point totals without discipline or termination."   Doc. 26-1 at 5.   Mason has adduced no evidence to rebut that statement.   While Mason initially testified in his deposition that High Sec Labs was lenient about attendance, and that an employee named "Joe" had accumulated 9 attendance points, Mason later clarified that High Sec Labs had terminated Joe based on his attendance violations.   Doc. 26-2 at 15, 26.   Mason also testified that he knew of "four or five other people [who] got fired for attendance."   Doc. 26-2 at 26.   Consequently, Mason cannot show that High

Sec Labs treated him differently from other employees who also had violated its attendance policy.   *See Boyland*, 390 F. App'x at 975.

Thus, even construing all facts and reasonable inferences in Mason's favor, there is no triable issue of fact on pretext.   *See Centurion Air Cargo, Inc.*, 420 F.3d at 1149.[2]

## CONCLUSION

For the reasons stated above, the court **GRANTS** Defendant High Sec Labs' summary judgment motion (Doc. 25).   The court separately will enter final judgment for High Sec Labs.

**DONE** and **ORDERED** this December 29, 2021.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE

---

[2]  The court need not reach High Sec Labs' alternative argument regarding collateral estoppel.   Doc. 25 at 2, 17–24 (arguing that the Alabama Department of Labor denied Mason unemployment benefits based on a finding that he was terminated for misconduct).